The Judges,
after duly considering this case, were unanimously of opinion, that the new trial should be refused. The opinion of the court was delivered by Mr. Justice Waties, and is substantially as follows :
The question before us, is not whether the sentence of a foreign court of admiralty founded on a lawful ground, may be opened ; there can be no doubt as to this point. If the ground on which the sentence proceeded, is valid by the law of nations, and it is set forth with sufficient certainty, we are bound by it, however partial or insufficient the proofs may have been ; but all the authorities quoted, shew, that where the real ground is uncertain, evidence may be admitted to ascertain this, and of course the truth of the ground may be again examined.
This sentence states the ground of condemnation to be a breach of blockade, but the libel alleges as the only ground of confiscation, that the vessel and cargo are enemy's property. The sentence, therefore, proceeded on matter not in issue ; for, although the monition charges the breach of blockade, yet the libel does not allege it, and the owners were only bound to answer the allegations contained in the libel; because, it is this part of the proceedings in the admiralty courts which contains all the grounds of confiscation and forfeiture, against which, the owners are bound to defend themselves.
It is analogous to a declaration at common law, which contains every matter which a defendant is bound to answer or plead to. It may be said, that this is a rigid construction, and it has been argued, that some indulgence ought to be shewn to the informalities of these inferior admiralty courts. I am not disposed to shew any indulgence to the late proceedings of the British prize courts. I will irfcejy. confess, that I had rather seek for some circumstance *368 in a case like this, to justify me, in refusing to give effect t0 t|le sentence which has been given in this case, if it was necessary. During the late and present war between Great Britain and France, the commerce of the United States, was for a long time the common prey of the ships and privateers of both these powers, and still continue to be so. It was not so surprising that the French should plunder us, as for a long time they robbed indiscriminately, and seemed to think that the whole world was subservient to their use; but what excuse is there for a nation who professes to love justice, and to vindicate the rights of other nations ? Who would have supposed, that Great Britain would have permitted corrupt and unprincipled courts to assist the rapacity of her cruisers, and to make plunder a system ? One belligerent, may indeed, prohibit any intercourse with places belonging to another, which are besieged or blockaded ; but the extravagant assertion of this right by Great Britain, was an unwarrantable obstruction of the trade of neutral nations, and a violation of their independence. How preposterous was it to attempt to blockade the whole European coast, from the Texel to the Mediterranean, besides all the islands in the West Indies, belonging to her enemies ! and this was not more preposterous than wicked. She had a right to employ means which might compel her enemy to yield to just and safe terms, but an attempt to starve a whole nation could never succeed. It was a thing obviously impossible, and was therefore unwarrantable and unjust; it could only produce a partial distress instead of putting an end to the war, have the effect of increasing the exasperation of her enemy, and making his resistance more obstinate and determined. In a case, said to have been tried before Lord Kenyon, some time ago, in which the sentence of a foreign court of admiralty was pleaded, and a cause of condemnation stated, which if true was valid ; be went the length of saying, “ that notwithstanding the rule that “ such foreign sentence was conclusive, yet as it was noto- “ rious, that the proceedings of the French courts were u founded on the most outrageous and unjust pretencés, he *369 ei thought it deserved to be considered, whether the grounds “ should not be re-examined.”
We should be equally warranted in saying the same thing of some of the sentences of the British vice-admiralty courts ; but the grounds in this case were sufficiently open to examination, without departing from the ordinary rule. The libel states one ground, and the decree another ; we may therefore fairly inquire how far either was supported. If, as the libel states, the brig was enemies'1 property, this does not discharge the insurers, as there was no warranty of the property ; but this was not attempted to be proved on the trial, and the sentence does not state it to be so. If, on the other hand, the ground of condemnation was breach of blockade, there was no evidence of this fact. The only notice of a blockade was given by the privateer, which After-wards captured the brig ; and, from the evidence which has been read, there is reason to believe that there was no fleet or public vessel of war off the port of Cadiz at the time j and indeed the decree itself proves there were none, for the property is condemned for the use of the privateer, and not for the use of the blockading squadron, which, conformably to the British prize acts, it would have been if any fleet had then been upon that station. Upon either ground, therefore, the condemnation was .unwarrantable, and the insurers are liable.
Rule for new trial discharged.
Present, Grimke, WatieSjBay, Johnson, Tres&evant and Brevard.